IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CODY M.,[1] | ) |
|     Plaintiff, | ) ) ) ) No. 20 C 2731 |
| v. | ) ) Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) ) ) |
|     Defendant. | ) |

**ORDER**[3]

Before the Court is Plaintiff Cody M.'s motion seeking remand of the Administrative Law Judge's ("ALJ") opinion denying his applications for child's insurance benefits and supplemental security income ("SSI") (D.E. 21), and the Commissioner's cross motion to affirm that decision. (D.E. 23).

**I.     PROCEDURAL HISTORY**

Plaintiff was born on April 17, 1994, and filed his claim for adult child disability benefits[4] on May 2, 2016, and SSI on June 21, 2016, alleging he has been disabled due to anxiety, depression, obsessive-compulsive disorder, scoliosis, facet syndrome, and spondylolysis since

---

[1] Plaintiff's surname has been omitted from this opinion in compliance with the Court's Internal Operating Procedure No. 22.

[2] The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On May 14, 2020, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 10.)

[4] Adult child disability benefits are benefits paid to adults who became disabled before the age of 22. They are considered "adult child" benefits because they are based on the earnings of a parent, and not their own work history. https://www.ssa.gov/benefits/disability/qualify/html, last visited on April 17, 2023.

January 1, 2007. (R. 83-84, 93.) On November 15, 2018, Plaintiff, who was represented by counsel, testified at a hearing before an administrative law judge ("ALJ"). A vocational expert ("VE") also testified at the hearing. On April 2, 2019, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. (R. 12.)[5]

## II. ALJ's DECISION

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. (R. 15-27.) The ALJ found at Step One that Plaintiff had not engaged in substantial gainful activity since January 1, 2007, the alleged onset date. (R. 15.) At Step Two, the ALJ concluded that Plaintiff had the following severe impairments: anxiety, depression, obsessive-compulsive features, and scoliosis. (R. 17.) The ALJ concluded at Step Three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). (R. 18.) With respect to the "Paragraph B" criteria for determining the severity of mental impairments, the ALJ found that Plaintiff had mild limitations in his ability to understand, remember, or apply information, moderate limitations in his ability to interact with others and concentrate, persist, and maintain pace, and mild limitations in his ability to manage himself. (R. 19.) Before Step Four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: he could push and pull to the same extent he could lift and carry, and occasionally climb ramps, stairs, scaffolds and ladders, and occasionally balance, stoop, kneel, crouch, and crawl. (R. 20.) Plaintiff was further able to perform simple, routine, repetitive tasks and understand, remember, and carry out simple instructions. (*Id.*) He

---

[5] The Appeals Council ("AC") subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

2

could adapt to occasional changes in the work setting and interact no more than occasionally with the public, co-workers, or supervisors. (*Id.*) He was able to meet production rate pace in a shift, but was unable to meet fast-paced, high production demands, such as on an assembly line. (*Id.*)

At Step Four, the ALJ concluded that Plaintiff had no past relevant work and at Step Five, the ALJ concluded that based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. (R. 25-26.)

### III.  ANALYSIS

#### A.  Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination. Rather, this court asks whether the ALJ's decision reflects an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citations and quotations omitted). The claimant has the burden of proof at steps one through four of the five-step sequential process for determining disability. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At Step Five, the burden of proof shifts to the Commissioner of Social Security to show that the claimant can adjust to other work existing in "a significant number of jobs…in the national economy." *See Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)).

Plaintiff makes two arguments in favor of remand: (1) the ALJ failed to properly evaluate Plaintiff's allegations about the severity of his symptoms in accordance with SSR 16-3P; and (2) the ALJ did not evaluate Plaintiff's mental RFC in accordance with SSR 96-8p. (Doc. # 22; Pl. Mem. in Support of Sum. J. at 4, 8). We will address each allegation in turn, mindful of the Commissioner's recognition that Plaintiff does not argue that the ALJ's opinion is not supported by substantial evidence. (Doc. # 24: Def. Mem in Support of Sum. J. at 1).

**B.     The ALJ Properly Evaluated Plaintiff's Subjective Symptoms.**

Social Security Regulation 16-3p guides an ALJ about how to evaluate the intensity and persistence of a claimant's subjective symptoms, so that he or she can determine how those symptoms might limit the claimant's ability to perform work-related activities.[6] The gist of Plaintiff's argument is that the ALJ improperly assessed Plaintiff's credibility, although SSR 16-3p no longer uses the word "credibility" when making a subjective symptom analysis; specifically, Plaintiff argues that the ALJ failed to properly explain how, "given [Plaintiff's] degenerative disc

---

[6] https://www.ssa.gov/OP_Home/rulings/di/01/SSR2016-03-di-01.htm, last visited on April 18, 2023.

4

disease and anxious mood, impaired functional status, and constricted or restricted affect . . . Mr. Motsinger's alleged inability to engage in physical activities and social withdrawal was inconsistent with the record." (Pl. Mem. in Support of Sum. J. at 5.) Plaintiff summarizes the evidence of his impairments – both physical and mental – and then suggests that in combination, they could have a greater impact on his ability to work than that found by the ALJ, and therefore, the ALJ's failure to consider and explain how he considered Plaintiff's impairments and symptoms in the aggregate is grounds for remand. Plaintiff further argues that his treatment history – most specifically his spinal surgery, use of opioids to relieve his pain, and physical therapy – support his contention that his symptoms were as severe as alleged. Finally, he contends that the ALJ's failure to specifically address whether Plaintiff's alleged need to lie down throughout the day was supported by the record is an additional ground for remand.

Plaintiff is mistaken.

"While it is true that an ALJ's decision must be sufficiently detailed that [the court is] able to trace its path of reasoning," *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005), "an ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence." *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013). To put it another way, "[a] reviewing court is charged with reading an ALJ's opinion as a whole and taking a common-sense approach to its review." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) citing in, *Brandi B. v. Kijakazi*, No. 21 C 4383, 2022 WL 2463558, at *6 (N.D. Ill. July 6, 2022).

In this case, we note that Plaintiff is not arguing that substantial evidence does not support the ALJ's conclusions, only that the ALJ failed to properly articulate her reasoning. We disagree and find that after considering the opinion as a whole, we are able to trace the ALJ's reasoning

5

from the evidence to her conclusion that Plaintiff's symptoms were not as severe as he alleged, and that these symptoms did not support a finding that he was disabled.

Specifically, the ALJ acknowledged Plaintiff's testimony about the severity of his pain and subsequent surgery due to his scoliosis; his testimony that he had to lay down during the day because of pain; his medication regimen, which included narcotics; and the fact that Plaintiff continued to complain of pain after surgery. (R. 21-22.) The ALJ then contrasted this evidence with Plaintiff's normal gait and muscle strength at a number of examinations, an X-ray showing improvement in his back after surgery, evidence that Plaintiff's complaints of pain might have been related to narcotic-seeking behavior, and a medical evaluation during which Plaintiff was able to sit for 58 minutes, stand for 31 minutes, and carry 22 pounds. (*Id.* 23.) As for his mental health, the ALJ acknowledged Plaintiff's ongoing mental health treatment, his complaints of anxiety and obsessive impulses, and medical examinations that documented limited social skills, depression, anxiety, and blunted affect; the ALJ compared them to intact attention, concentration, and memory at various examinations as well as Plaintiff's interest in doing research on the computer, his ability to enroll in college for a time, and his goal of studying computer science. (*Id.*) With respect to both Plaintiff's mental and physical symptoms, the ALJ also considered them in relation to the various medical opinions in the record, explaining, for example, why she disagreed with one Disability Determination Services ("DDS") physician who determined Plaintiff did not have a severe mental health impairment by referring to medical evidence of Plaintiff's affective and anxiety disorders (R. 24-25), and acknowledging the various places in the medical evidence that supported Plaintiff's ability to lift 20 pounds. (R. 23.)

The fact that Plaintiff may wish that the ALJ described her findings differently or in more detail, or that the ALJ explained how she considered every piece of evidence, does not obviate our

finding that in looking at the ALJ's opinion as a whole, we can trace an accurate and logical bridge from the evidence to her conclusion that Plaintiff's symptoms were not as severe as he alleged and did not support a finding that he was disabled.[7]

      **C.**      **The ALJ Failed To Properly Explain the Basis for Plaintiff's Mental RFC.**

Plaintiff next argues that the ALJ failed to properly explain why she assigned the mental RFC that she did, specifically with respect to Plaintiff's moderate limitations in interacting with others and moderate limitations in concentration, persistence, and pace. (Pl. Mem. in Support of Sum. J. at 8.) Although Defendant contends that this allegation is in substance simply another jab at the ALJ's "failure to explain" her reasoning, we disagree and find that additional analysis is necessary.

Plaintiff first argues that the ALJ should have provided a basis in the record for the RFC finding that Plaintiff was limited to occasional interactions with the public, coworkers and supervisors. Specifically, he takes issue with the ALJ's failure to provide "a limitation for his inability to have normal interactions with coworkers and supervisors," suggesting that the ALJ needed to specify not only limitations on the quantity of time spent interacting with coworkers and supervisors, but also on the "quality" of those interactions. (Pl. Mem. in Support of Sum. J. at 9). Plaintiff's argument has merit. In her opinion, the ALJ gave great weight to the opinion of DDS physician Glen Pittman, M.D., who specifically opined that Plaintiff had moderate limitations in

---

[7] Plaintiff's argument that the ALJ failed to consider his mental and physical symptoms in combination is also without merit. Unlike the cases he cites, where the ALJ either ignored lines of evidence or didn't explain at all what evidence he or she found not credible when considering Plaintiff's subjective symptoms, as we explain above, we are able to trace the ALJ's reasoning with respect to how she evaluated all of Plaintiff's symptoms. The requirement to which Plaintiff refers regarding consideration of impairments in combination is not relevant to symptom analysis. Instead, an ALJ considers the severity of impairments in combination at Step Three, when determining whether an impairment meets a Listing, and also with respect to whether a claimant's obesity is severe when considered in combination with other impairments. *Chambers v. Saul*, 861 F. App'x 95, 99 (7th Cir. 2021). !

his ability to "interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (R. 116, 131.)[8] The RFC, however, only states that Plaintiff is limited to "occasional" interaction with supervisors, coworkers, and the public, and we are unable to determine whether or how the ALJ translated the specific limitations noted by Dr. Pittman into an RFC that merely allowed for "occasional" interactions. *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).

In *DeCamp,* the Seventh Circuit remanded because the RFC accounted only for the limitations in the narrative portion of the medical opinion and not the additional specific limitations identified in the "check box" part of the opinion. In this case, Dr. Pittman did not provide a narrative discussion about Plaintiff's ability to interact with others and thus we must assess the RFC solely with respect to the check box opinions he provided. As Plaintiff points out, it is unclear whether Dr. Pittman's assessment that Plaintiff had moderate limitations in such things as the ability to accept criticism from supervisors, to get along with coworkers without distracting them, or exhibiting behavioral extremes were addressed by an RFC that limited him to "occasional" interactions, which by definition could occur up to one-third of the workday.[9] The RFC fails to account for Dr. Pittman's specific limitations concerning Plaintiff's social interactions and therefore, remand is required. *See also Leesa S. v. Kijakazi,* No. 20 CV 1874, 2023 WL 2186010 at *4-5 (N.D. Ill. Feb. 23, 2023) (remanding where ALJ gave significant weight to doctors' opinions but failed to incorporate the opinions' specific limitations interacting with others into the RFC.)

---

[8] Dr. Pittman also listed the evidence he relied on when forming his opinion, but he did not provide a full "narrative" explanation of Plaintiff's limitations or the reasons for them.

[9] www.ssa.gov/OP_Home/rulings/di/01/SSR96-09-di-01.html, last visited on 4/19/23.

Finally, Plaintiff argues that the RFC's limitation to "simple, routine, and repetitive tasks," and to the ability to understand, remember and carry out simple instructions at production rate pace but no fast-paced, high production demands, does not adequately account for his moderate limitations in concentration, persistence and pace. (Pl. Mem. in Support of Sum. J. at 10). In this case, Plaintiff is incorrect. Although the Seventh Circuit in the past has held that a limitation to simple tasks may not account for moderate limitations in concentration, persistence, and pace, *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 620 (7th Cir. 2010), the Court of Appeal has recently clarified that an RFC incorporating all of the limitations in a medical opinion is sufficient and does not require specific terminology. *See, e.g., Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (affirming where agency consultants "translated" moderate CPP checklist ratings in an RFC that claimant "could carry out simple instructions and make simple decisions with no significant limitation"); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations.") With respect to that portion of the RFC concerning Plaintiff's moderate limitations in concentration, persistence and pace, the ALJ did incorporate the entirety of Dr. Pittman's "check boxes" into both the hypothetical she provided the VE and her ultimate RFC and therefore, we are able to trace her reasoning from the evidence to her conclusion.[10]

---

[10] We note an issue not raised by the parties. Dr. Pittman's opinion contains very little "narrative" discussion, but he does say that Plaintiff is "capable of performing one/two step tasks." (R. 132.) That particular limitation does not appear anywhere in either the hypothetical the ALJ gave the VE or in the RFC itself, and although we do not remand on that basis, we instruct the ALJ to consider that portion of Dr. Pittman's opinion on remand.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment (D.E. 21) and denies Defendant's motion. (D.E. 23.)

ENTER:

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: April 24, 2023**